**NOERR MOTOR FREIGHT, Inc., et al.**

v.

**EASTERN RAILROAD PRESIDENTS CONFERENCE et al.**

**Civ. A. No. 14715.**

United States District Court
E. D. Pennsylvania.

May 1, 1956.

See also 113 F.Supp. 737.

Robert McCay Green, Dilworth, Paxson, Kalish & Green, Philadelphia, Pa., for plaintiffs.

Philip Price, Barnes, Dechert, Price, Myers & Rhoads, Philadelphia, Pa., for Pennsylvania R. Co.

Charles J. Biddle, Drinker, Biddle & Reath, Philadelphia, Pa., for Central R. Co. of N. J., Central R. Co. of Pa., Norfolk & Western R. Co., Western Maryland Ry.

Howard F. Burtt, Guckes, Shrader & Burtt, Philadelphia, Pa., for Baltimore & O. R. Co.

C. Brewster Rhoads, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for Eastern R. R. Pres. Conference.

Arthur Littleton, Morgan, Lewis & Bockius, Philadelphia, Pa., for Erie R. Co., Reading Co.

Francis J. Myers, Myers & O'Brien, Philadelphia, Pa., for New York Cent. R. Co.

Saul, Ewing, Remick & Saul, Harry E. Sprogell, Philadelphia, Pa., for Lehigh Valley R. Co.

Daniel Mungall, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for Boston & Maine R. R., Maine Cent. R. Co., N. Y., N. H. & H. R. Co.

John Lewis Evans, White, Williams & Scott, Philadelphia, Pa., for N. Y., Ontario & Western Ry.

Harold B. Bornemann, Philadelphia, Pa., for Lehigh & New England R. Co.

CLARY, District Judge.

There is presently before the Court for disposition the motion of certain defendants for leave to amend answers and to file counterclaim against all of the plaintiffs. This action, a proceeding under the Sherman Anti-Trust and Clayton Acts, 15 U.S.C.A. §§ 1 et seq., 12 et seq., was filed January 17, 1953. Generally, the complaint alleges a conspiracy on the part of the Eastern Railroad Presidents Conference, all of the railroads represented in the Conference, several present and past presidents of the said railroads individually, and Carl Byoir & Associates, Inc., a publicity agent employed by the Conference, to monopolize the business of the long haul freight industry in the northeastern part of the United States. After disposition of preliminary motions, the defendants answered but did not counterclaim. Extensive pre-trial discovery proceedings were had and many conferences in the nature of pretrial proceedings were held. During the year 1955 discovery proceedings were not pressed vigorously by either plaintiffs' or defendants' counsel, undoubtedly, because of rumors and newspaper articles that the higher echelons of each industry were engaged in a series of discussions looking toward an amicable adjustment of the matter. However, it is clear to the Court that no attorney of record in this Court had any personal knowledge of any such settlement discussions. Part of the discovery proceedings involved the examination of the files of the Pennsylvania Motor Truck Association, inaugurated in the Summer of 1955 and which had not yet been concluded by the end of 1955. At about the latter date the attorneys for plaintiffs notified the Court and opposing counsel (contrary to previous statements of the then trial counsel for plaintiffs that the case was not to be pressed) that the plaintiffs desired to proceed to trial at the earliest possible date. During the course of pretrial proceedings held in December, 1955, and January, 1956, counsel for the defendants notified the Court and opposing counsel that because of the discovery of documents in the files of PMTA, which counsel alleges indicated the same sort of conspiracy against the railroads as that alleged by the truckers in their complaint on the part of the railroad, they desired to file a petition to amend the answers and to file a counterclaim against the truckers upon the charge of conspiracy of an identical kind and character alleged by the truckers, to wit: an attempt to monopolize and unduly restrain the defendants in their efforts to secure long haul freight business. Plaintiffs filed an answer and the Court heard argument thereon.

 Without elaborating too greatly upon the reasons therefor, the Court will grant the motion to amend the answers to include the counterclaim as prayed for in the petition filed by certain defendants (Docket paper No. 435.) I agree with the contention of the plain-

tiffs that under the decision of the Supreme Court of the United States in the case of Kiefer-Stewart Co. v. Joseph E. Seagram, 1951, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219, an allegation that the plaintiffs themselves were engaged in an illegal conspiracy would not be a defense to an unlawful combination by defendants or immunize them against liability to those they injured in an illegal conspiracy. I likewise agree with the contention of plaintiffs that the allegation in the counterclaim that the suit was an abuse of judicial process which had been unjustly and unfairly brought, not in good faith, should not be an impelling reason in granting defendants' motion.

On the other hand, I do see many equities which run in favor of the defendants' position. First, it was the acquisition by the plaintiffs of copies of certain documents taken from the Byoir files which sparked the instant suit on the part of plaintiffs. It has been stated scores of times in the course of these proceedings on behalf of the plaintiffs that it was the discovery of these papers which afforded them the opportunity to prove what they had long suspected, that there was a conspiracy among the defendants to do the very things which they have alleged in their complaint. It should not, therefore, come as a surprise to anyone that if the plaintiffs themselves were engaged in a like conspiracy, the defendants would find the documentary proof necessary to establish it in the files of the PMTA and its publicity counsel. This documentary survey had not been completed at the time the defendants asked the Court to set a date to argue this present motion and so far as the Court presently knows has not yet been completed. Secondly, the counterclaim is in many respects a reiteration of defenses raised in the several answers which attempt to justify the actions of the defendants in competition with the actions of the truckers and which has been throughout the course of this case commonly referred to as "climate of competition in the long haul freight industry". The ordinarily valid objection of the plaintiffs to the apparent delay of the defendants in asserting the counterclaim is, I believe, far outweighed by the practical consideration of effective disposition of litigation.

We are faced in this suit with serious cross-claims between two giants of American industry. The lowest estimate of trial time yet made is two calendar months. For the Trial Judge to hear both actions will, in the opinion of the Court, not unduly prolong such a trial. It is the further opinion of the Court that the allowance of this motion will not necessitate any postponement of the trial of this action beyond the date set, viz., October 1, 1956. The only aspect of the case which might possibly cause delay would be discovery proceedings relating to possible damages on the part of the railroads, should they prevail in their claim. That situation can be handled very practically. The plaintiffs themselves are to establish in their case in chief damages only to a selected few persons. As to the counterclaim proof of damages, that could be limited to only one railroad. The Court sees no reason why in a period of five months discovery as to that particular feature could not be completed. The time of the Court, counsel and litigants can be more effectively conserved if the matter is disposed of in one proceeding. I have carefully read and analyzed all of the citations submitted by the plaintiffs and do not feel that they govern this particular situation. It is the view of the Court that the interests of justice will be better served by allowing the motion and disposing of the matter in one proceeding, rather than by two separate, independent and long-drawn-out proceedings.